Marshall, C. J.,
concurring. These two cases were tried separately in the common pleas court of Jefferson county and in each instance a verdict was rendered in favor of the plaintiff. The plaintiffs below are now plaintiffs in error in this court, judgments having been rendered for different amounts, although the testimony was practically the same in both cases. The petitions were identical, and the issues were so nearly identical as to present the same legal questions for review. The cases were therefore briefed and argued jointly in the court of appeals and in this court. The defendant in the trial court, now defendant in error, is a coal-mining corporation, and on September 16, 1919, at the time of the occurrences upon which this controversy is based, plaintiff’s intestates were employes of such company as miners or loaders of coal. On the morning of that day, as they entered the mine, and when opposite the room-neck or mouth of room No. 17, there were some mine cars standing on the track, and as decedents were passing around those cars there was an explosion of mine powder in the room neck, whereby decedents were injured, resulting in their deaths. The evidence discloses that the keg of powder which had exploded was brought into the mine on the Saturday afternoon preceding, after the power had been shut off, by two other employes, who were “day men” and who were not either mine foremen or mine superintendents. There was evidence tending to show that the keg of powder had *124 been exploded by coming in contact with the electric power cable charged with electricity, and there was at least some evidence tending to prove that the “day men” had placed the keg of powder directly upon the cable.
The powder used in the mine was purchased by the workmen and delivered by the store near the mouth of the mine, and thence taken into the mine by the workmen, under some arrangement either with the storekeeper or the miners. If the powder was placed either on the power cable or so dangerously near to it as to cause the same to be exploded, such act was performed by the day men when they carried the powder to the neck of room 17; and it was not claimed that the company was liable because of any wilful act of the employer, but rather for failure to observe a lawful requirement. The defense of the coal company was that it was an employer having more than five workmen, and that it had complied with the workmen’s compensation act, and that therefore the actions could not be maintained. The trial in each case resulted in a verdict for the decedent’s estate, and upon error prosecuted to the court of appeals both judgments were reversed on the ground that the statutes under which liability was claimed were not lawful requirements. From the judgments in that court error is prosecuted to this court.
It being admitted that the coal company has complied with the Workmen’s Compensation Act and has paid the required premiums into the state insurance fund, liability must be predicated, if at all, upon Section 29 of the Workmen’s Compensation Act, known as Section 1465-76, General Code, and *125 such liability, if any, is found in the following language of that section: “In case such injury has arisen from the wilful act of such employer or any of such employer’s officers or agents, or from the failure of such employer or any of such employer’s officers or agents to comply with any lawful requirement for the protection of the lives and safety of employees, then in such event, nothing in this act contained shall affect the civil liability of such employer.” In the same section the term “wilful act” is defined as follows: “The term ‘wilful act,’ as employed in this section, shall be construed to mean an act done knowingly and purposely with the direct object of injuring another.”
Neither by the pleadings nor by the testimony is it sought to place the liability upon the ground of a wilful act, but the sole contention is that there has been a violation of a lawful requirement. It is not a question whether plaintiff below suffered damage, or whether he was entitled to be compensated out of the state insurance fund. If application had been made for compensation out of that fund it would very readily have been allowed in the full amount. The only question before this court is whether the claimant was justified in electing to proceed against the employer under the exceptions stated in Section 1465-76, on the ground of the alleged failure of the employer to comply with some lawful requirement.
It is claimed that the lawful requirement which has been violated is created by Section 962, General Code, from which we quote as follows: “No workman shall have at any one time more than one twenty-five pound keg of blasting powder in the mine, nor more than three pounds of high explosives, *126 and no person shall keep blasting powder or explosives dangerously near the electric wire or power cable in any part of the mine where electric wires are in use.”
The employer was engaged in mining coal and therefore amenable to all the provisions of the mining code, including Section 962, General Code, above quoted. The principal question for determination, therefore, is whether that part of the section above quoted is a lawful requirement, a violation of which creates a right of action. It cannot be claimed that that language is not definite or specific, or that it does not clearly define the duties of the persons therein mentioned; neither can it be doubted from this record that some “person” placed the keg of powder either on the power cable or so near to it as to cause it to be exploded, and that the injury complained of resulted from that fact. The fact of the explosion, coupled with the fact of fragments of the keg being found on the cable, makes it fairly conclusive that some “person” violated the provisions of that law; or at least that there was evidence from which the jury might fairly infer such violation. These matters are referred to in such detail and with such repetition in order to show that the state of the record in this case and the state of the law under which liability is claimed are such that the case must turn chiefly upon the question whether or not Section 962, General Code, constitutes a lawful requirement.
It will be observed that the requirements of that section are not directly imposed upon the employer, but rather that they define the duties of workmen and other persons; and the section does not provide that the employer is enjoined to the perform *127 anee of any particular requirement, and does no more than define the duties of workmen and other persons who handle powder and other explosives in the course of the service to be rendered by them. It was evidently not the legislative intent to compel the employer, in each and all instances, in the course of handling such explosives, to stand at the elbow of the workmen, or other persons who employ explosives on their own account and at their own expense in mining coal, and it is manifestly so impossible for employers to enter into such details in the management of large mining properties that if the legislature should be held to have thus intended it would render operation of mines where a large number of men is employed impracticable if not impossible. If it was the legislative intent to so provide, it may be inquired why the general assembly did not employ the same language in this section that may be found in the many other sections creating lawful requirements. The section of the code which has been the most prolific as the basis of claims of lawful requirements is Section 1027, General Code, and it will be found that the duties therein set forth are imposed upon “the owners and operators of shops and factories.” Other well-known and oft-referred-to sections are 12593, 12595, 12575, 12576 and 13002, General Code, and other sections referring to the duties of employers, owners and lessees of property, but not in a single instance referring to the duties of “workmen” or “persons.” Other sections of the mining code very clearly refer to certain duties of the owners and lessees of mines, relating to protection of lives and safety of employes, and those sections undoubtedly constitute lawful requirements. Among such may be mentioned Sections *128 916, 922 to 934, inclusive, 938, 942, 943, 944 and 946 to 950, inclusive. It is equally clear that other sections of the mining code do not define duties of the employer, or of the owner or lessee of a mine, and therefore do not constitute lawful requirements. Among these may he mentioned Sections 951 to 967, inclusive. Those sections of the mining code preceding Section 951, General Code, clearly relate to the duties of employers, owners and lessees, while those including and following 951 as clearly relate to the duties of workmen, employes and servants. The mining code was enacted long before the Workmen’s Compensation Law was enacted, and before the constitutional amendments, and therefore at a time when lawful requirements had not yet been thought of. It was evidently the purpose of the mining code to establish certain rules and regulations designed to bring’ about greater safety in underground operations, and to this end the legislature not only defined the duties and responsibilities of employers, owners and lessees, but proceeded further to lay down certain rules and principles to govern superintendents and foremen, and finally provided other detailed rules to apply to the workmen themselves. It is true that after defining the duties of workmen and other persons certain duties and responsibilities were imposed by Sections 951 and 952 upon superintendents and foremen, to see that the provisions of the code were carried into effect. These two sections are couched in general terms and place upon superintendents and foremen the personal duty and responsibility of seeing that all the provisions of the code are carried into effect, including not only those duties especially enjoined upon employers and owners, but also those enjoined *129 upon workmen and servants. The mining code does not specifically state — neither can it reasonably be inferred — that the legislature intended that the employer should be made to respond in damages because the workmen fail to properly execute an order properly issued by a superintendent or foreman, and this should especially be true in the instant ease where the negligent act of the workman was in the mine far removed from the eye of the superintendent, however- watchful he might be.
In regard to all those things required to be done by employers and owners the obligation is in no wise changed by reason of performance having in fact been rendered by officers and agents, because Section 1465-76, General Code, distinctly provides that the employers and owners shall be liable for the failure of their officers and agents. Nowhere in the mining code is it provided that the owner or employer shall be responsible for the acts of employes and servants, as these terms are understood in distinction from officers and agents, because upon no principles should employers be held liable to the workmen for the workmen’s own negligence, or for the negligence of their fellow workmen; neither is the employer responsible under Section 1465-76 to the workmen for the acts of the superintendent or foreman, unless such acts be wilful or violative of a lawful requirement. If any obligation is imposed upon the employer by Sections 951 and 952, it is only declaratory of the obligation which existed at common law, that of being responsible for the wilfulness and negligence of superintendents and foremen. Before the enactment of the mining code the liability of the employer was only that which existed at common law, to-wit, the obligation to exercise ordi *130 nary care and to have his superintendents and foremen also exercise ordinary care. Since the enactment of the mining code all the duties therein enjoined are statutory and it is no longer necessary to have the determination of a jury that a failure to carry out those provisions is not ordinary care, the mere non-performance resulting in loss and damage creating a liability. No liability existed either at common law or under the mining code where injuries were caused by the negligence of a fellow servant, and this rule has not been changed by the Workmen’s Compensation Act. A careful examination of the mining code discloses that it governs all the practices and processes of coal mining in a thorough maimer and to the most minute detail; and if every practice, process and duty therein detailed and enjoined upon owners, lessees, employers, superintendents, foremen, workmen and “persons” should be held to constitute lawful requirements for the non-observance of which the employer would be liable to respond in damages, then his contribution to the state insurance fund would afford him no protection whatever. He would receive no quid pro quo. Coal mining is classed by the industrial commission as extra-hazardous, and a high premium rate is assessed. The mining industry is very large in Ohio and the aggregate contribution of mine operators to the state fund is a large sum. Payment is compulsory and may be collected by civil action, and the employer has no alternative. If the payment of the premiums affords no insurance to mine operators, and their contribution is used to pay compensation to employes in other lines of industry, such discrimination against the mining industry amounts to a denial of the equal protection *131 of the laws. Such a construction of the mining code would close every mine in Ohio where five or more workmen are employed. In the judicial interpretation of these sections it will not be presumed that the legislature intended such disastrous results.
This question may be examined from - another angle. Section 1465-76, General Code, expressly provides that employers shall be entitled to plead the defense of contributory negligence and the defense of the fellow-servant rule, yet it is earnestly insisted that by virtue of Sections 951 and 952, General Code, it is the duty of superintendents and mine foremen to see that the provisions of the other sections are carried out, and that therefore all acts and omissions of workmen and other persons are chargeable to them, and they being officers and agents of the employer all acts of workmen and other persons are thus indirectly chargeable to the employer. Such a theory creates the very singular situation of one group or section very clearly creating the liability and another section as clearly excusing it.
The foregoing observations further emphasize the confusion with which this entire subject has become involved. It is therefore not strange that the court of appeals in its opinion in this ease deplored this condition and expressed the desire for “further judicial construction by the Supreme Court that an employe who meets with an injury will know his rights prior to bringing an action and not at the end of it.” It will be admitted that at the present time neither employers nor employes, nor lawyers nor courts, know the rights of either employers or employes. Several cases have been decided by this court, but no legal principles have become permanently settled. The prime need is an *132 accepted definition of lawful requirement. The case of American Woodenware Mfg. Co. v. Schorling, 96 Ohio St., 305, attempts to state what is not a lawful requirement, and the same attempt is made in the recent case of Patten v. The Aluminum Castings. Co., 105 Ohio St., 1. Those negative definitions, even if accepted, do not clarify the situation, neither do they satisfy the vast army of interested employers, employes, lawyers and courts. As with the terms “fraud,” “equity,” “police power,” and many other legal expressions, the exact limitations of the term “lawful requirements” will probably never be definitely fixed. Yet surely some principles can be stated with accuracy.
The term “lawful requirement” is first found in Section 1465-76, General Code, and is not therein defined, neither is any definition found in any of the sections of the Workmen’s Compensation Law or Industrial Commission Law. It is found, however, that certain duties of employers are defined in Sections 871-15 and 871-16, and these two sections have been recognized as the lawful requirement sections of the act. These two sections may therefore be taken as a strong indication of what was in the mind of the general assembly concerning lawful requirements, and if they be taken as the basis the conclusion must be reached that lawful requirements relate to safety of the place of employment and to the furnishing and use of devices, safeguards, methods and processes designed for the reasonable protection of the life, health, safety and welfare of employes, and not to the acts of such employes themselves while being employed in places which have been rendered safe by reason of all such appliances, devices, safeguards, methods and pro *133 cesses having been furnished in full compliance with law. It is extremely unfortunate that this court, in the Schorling case, has practically rendered those two sections meaningless and useless, when they might well have been made the basis and the foundation of the law of lawful requirements and a safe guide in pointing the way to a proper administration of other sections of the General Code which may be found to contain provisions requiring employers to furnish safety devices, safeguards, methods and processes in their respective lines of industry. Again reverting to the mining code, it will be found that Sections 916 to 950 make provision for a great many devices and safeguards such as artificial ventilating systems, ventilating doors, additional openings to or means of ingress and egress, mine props, caps, first-aid supplies, signals, lighting, sprinkling, shields and guides on dangerous machinery, means of detecting firedamp, etc. All those provisions which relate to making the place of employment safe are undoubtedly lawful requirements. It seems equally clear that the conduct of individual workmen and other persons referred to in Section 962, who may negligently or even wilfully so conduct themselves as to cause a disaster, cannot be held to come within the reasonable purpose or meaning of the term lawful requirement, and this is true whether the term be measured by the standard of common sense or by the standard of Sections 15 and 16 of the Industrial Commission Act. It would seem that the foregoing, conclusions must necessarily be reached even though Section 1465-76 did not expressly provide that the defendant, shall be entitled to the defense of the fellow-servant rule; *134 but with this provision before ns the question should be one of little difficulty.
The court of appeals in this case reversed the judgment of the court of common pleas, on the ground that Section 962, General Code, does not constitute a lawful requirement. In this I agree with the court of appeals, but I disagree with the court of appeals upon its views relative to the fellow-servant rule. In the trial court the jury was instructed as follows: “You are further instructed, gentlemen, as a matter of law, that by the Statutes of Ohio the negligence of a fellow servant of the employe shall not be a defense where the injury was in any way caused or contributed to by the negligence of any person, in any way, having charge, care or control of such appliance. And the Court further instructs the jury as a matter of law that the term appliance as used in this statute, means a thing applied or used as a means to an end; that which is adapted to the accomplishment of a purpose; you are instructed as a matter of law that if you shall find from the evidence that the blasting powder was necessary to the mining of the coal of the defendant company, then a keg of the same would be an appliance, within the meaning of the above statutes.”
The statutes referred to in that instruction were Sections 6242, 6243 and 6244, General Code, known as the Norris Act. That part relating to appliances is found in Section 6244, and cannot by any possible stretch of the imagination be construed to refer to a keg of powder intended for the workman’s use, and supplied at his own cost. Section '6244 refers to defective and unsafe conditions and the neglect to employ safety appliances. It requires no expert *135 evidence to show that a keg of powder is not a safety appliance, and no precaution on the part of an employer can render a keg of powder safe, unless it is* carefully handled, as workmen are required to handle it by Section 962, General Code. The plaintiffs below were no more entitled to recover by reason of the careless and negligent conduct of the day men than the day men themselves would have been had they been the unfortunate victims of this disaster. The trial court was undoubtedly right in stating that a keg of powder is an appliance, but it is not in the category of those appliances referred to in Section 6244. It is questionable whether the Norris Act has any application to this controversy, and whether the fellow-servant rule referred to in Section 1465-76 is not the common-law definition and application of the fellow-servant rule. But it is not necessary to determine that matter in the instant case.
If the deaths of plaintiffs’ decedents were caused by negligence, it must have been by the negligence of their fellow servants; and that was far removed from the presence of the employer or his officers or agents and was committed while such fellow servants were engaged in executing a proper order, at a place which had been rendered “safe” so far as this record shows. And it further appears that the instrumentality which caused the disaster was one which is daily employed with perfect safety in all large mining operations.
For each of the foregoing reasons, to-wit, that Section 962, General Code, does not create a “lawful requirement,” and that the damage was caused by the negligence of a fellow servant, the judgment of the court of appeals should be affirmed.